FRANK KELLY (SBN 83473)
fkelly@shb.com
AMIR NASSIHI (SBN 235936)
anassihi@shb.com
EDWARD B. GAUS (SBN 289561)
egaus@shb.com
SHOOK, HARDY & BACON L.L.P.
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900
Fax: (415) 391-0281

Attorneys for Defendant
BAYER HEALTHCARE LLC,
erroneously sued as BAYER CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEN CASILLAS JR; APRIL CASILLAS; SAUL SANCHEZ; and LILIAN SOTO<br>　　　　　Plaintiff,<br><br>　　v.<br><br>BAYER CORPORATION and DOES 1 to 100, inclusive<br><br>　　　　　Defendants. | No. 3:23-cv-01609-AMO (*Consolidated with 3:23-cv-02199-AMO*)<br><br>**STIPULATED FORMS AND FORMAT**<br><br>**FOR DOCUMENT PRODUCTIONS** |
| APRIL CASILLAS, INDIVIDUALLY AND AS THE SUCCESSOR-IN-INTEREST OF BEN CASILLAS JR; AND BEN CASILLAS, SR., AS GUARDIAN AD LITEM FOR R. C., A MINOR AND V. C., A MINOR,<br>　　　　　Plaintiffs,<br><br>　　v.<br><br>BAYER CORPORATION and DOES 1 to 100, inclusive<br>　　　　　Defendants. | |

**STIPULATED FORMS AND FORMAT FOR DOCUMENT PRODUCTIONS**

The parties, by and through their respective counsel, hereby re-submit their Stipulated Forms and Format for Document Productions, originally agreed upon on August 8, 2023, pursuant to the Court's August 23, 2023 Order and the Court's Civil Standing Order.

WHEREAS, counsel for Plaintiff and Defendants (collectively, the "Parties," and each, a "Party") have met and conferred regarding discovery of electronically stored information ("ESI") of the Parties;

WHEREAS, the Parties have reached agreement on certain of the issues discussed regarding such discovery;

WHEREAS, the Parties have entered into this Stipulated Forms and Format for Document Productions ("Protocol") to facilitate the just, speedy, and inexpensive conduct of discovery involving electronically stored information ("ESI") and to promote, to the fullest extent possible, the resolution of disputes regarding the discovery of ESI and document production without Court intervention;

1. General Stipulations

    a. The Parties have entered into this Stipulated Forms and Format for Document Productions ("Protocol") to facilitate the just, speedy, and inexpensive conduct of discovery involving paper documents and ESI through reasonable, precise, and cost-effective strategies regarding the discovery of ESI and document production without Court intervention.

    b. Paper documents and ESI should be produced in accordance with the Federal Rules of Civil Procedure. The proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) shall be applied in all matters related to discovery of ESI, including

without limitation the preservation, collection, and production of such information. The Parties recognize and take into consideration the unique ability of each Party to evaluate its own ESI and determine the appropriate procedures, methodologies, and technologies for preserving, collection, and production of documents.

c. Each Party will identify an e-discovery liaison who is and will be knowledgeable about and responsible for discussing matters related to its ESI. Any attorney representing a Party, including the e-discovery liaison, may participate in meet-and-confer conferences, and it is not required that the e-discovery liaison be present for the Parties to meet and confer about matters involving ESI, however the Parties agree to work in good faith to schedule e-discovery conferences when the e-discovery liaisons are available to aid in resolving disputes involving ESI without court intervention.

d. The procedures and protocols outlined herein govern the production of all documents and ESI, including all computer generated information or data of any kind, by the Parties. This Protocol governs all Parties to these proceedings, whether they are currently involved or become so in the future. All disclosures and productions made pursuant to this Protocol are subject to the Stipulated Protective Order entered in this matter.

2. Production Format Protocols

a. Except as provided in Section 4 or elsewhere in this Order, all production images will be produced as multi-page, PDF files at 300 x 300 dpi resolution and 8.5 x 11 inch page size, unless a document requires a higher resolution or paper size in

3

order to be appropriately viewed. Each PDF file should be named as the corresponding Bates number of the first page of the PDF. Original document orientation should be maintained (*i.e.,* portrait to portrait and landscape to landscape). PDF files should be provided in a self-identified "IMAGES" folder.

b.  Documents or ESI containing color need not be produced initially in color and may be produced in black and white where color is not meaningfully required to understand the document, such as colorized charts, graphs, or where colorized lettering represents hyperlinks or has other meaning. If an original color image is produced in black and white, the receiving Party may for good cause request the producing Party to produce the image in color. Following a request for color production, the Parties will meet and confer on a reasonable, cost effective means of providing the requested document in color. The default file type for color images will be color PDF files.

c.  A unique Bates number shall be assigned to each page, and branded in the lower right-hand corner of the page, but shall not obscure any part of the underlying image. All Bates numbering will be sequential within a given document and use a consistent font and size throughout the production with no special characters or embedded spaces included in the Bates, unless necessitated for suffixes. Where required, suffixes may be separated from the Bates number by a Dash (-) or Underscore (_).

d.  Any confidentiality or other endorsements shall be branded on the lower left-hand corner of the page. The Parties shall use reasonable measures to ensure that any such branding does not obscure any part of the underlying image. No additional

STIPULATED FORMS AND FORMAT FOR DOCUMENT PRODUCTIONS

branding or designation made in reference to the document request to which a document may be responsive is required.

e.    A searchable, document-level text file shall be provided for each paper document or ESI file produced as PDF.  Each such file will have a filename matching the Bates number applied to the first page of  the corresponding static image file or placeholder file, followed by the .TXT extension.  For ESI, the Parties agree that the searchable, document-level text file shall be created directly from the native file. For ESI from which text cannot be extracted, for redacted documents, or for paper documents, the Parties agree that they will produce document-level OCR text for each such document.  To the extent practicable, the Parties will consider producing searchable text in UTF-8 format.

f.    **Load/Unitization File:** The Parties agree that the producing Party will provide the following load files for all productions:

- **Metadata Import File**: DAT format, in ASCII format (e.g., .txt, .dat, or .csv), using Concordance default delimiters to separate the fields and records.

- **Image Cross-Reference File**:  Standard Opticon delimited file in .OPT format,  containing the corresponding image information and indicating page breaks.

g.    Only one Metadata Import File and (if appropriate) one Image Cross-Reference File should   be included with each production.  The Metadata Import File should contain the metadata fields detailed and described in  Exhibit A and/or Exhibit B of this Protocol, as appropriate.  To the extent possible, the Parties agree to

STIPULATED FORMS AND FORMAT FOR DOCUMENT PRODUCTIONS

4871-2711-8720 v1

populate the CUSTODIAN field for all produced ESI and paper documents, if known and reasonable.

**h.** **Production Media:** The Parties agree that documents shall be produced preferably through a secure File Transfer Protocol ("FTP") provided via email or other web-based secure file delivery service. If the size of the produciton is so large that electronic delivery is impracticable or unfeasible, production may be made by physical media ("Physical Media") sent by a method no slower than overnight delivery via USPS, UPS, or FedEx, with notice by the Producing Party that production is coming via physical delivery. Acceptable Physical Media includes external hard drives, "thumb" drives, or other electronic media agreed to by the Parties. Each piece of Physical Media shall identify a production number corresponding to the production volume, as well as the volume of the material in that production. Each piece of Physical Media shall also identify: (1) the matter name and case number' (2) the Producing Party's name; (3) the production date; (4) the Bates number range of the materials contained on the Physical Media; and (5) a short description of the categories of information within the production and the type of materials on the media. In the event that a party utilizes an FTP for the production of documents, the information identified in this section to be provided with Physical Media shall be provided in a written production letter ("Transmittal Letter") with the accompanying email providing instructions for accessing documents through the FTP.

**i.** **Language:** A hard-copy document or ESI that contains a natural language other than English, in whole or in part, shall be produced in the original language. A

STIPULATED FORMS AND FORMAT FOR DOCUMENT PRODUCTIONS

4871-2711-8720 v1

producing Party is under no obligation to prepare, provide or search for English translations of non-English language documents or ESI.

3. Electronic Production of Paper Documents as Static Images

The Parties agree that to the extent that the producing Party elects to produce hard copy documents in electronic format, such documents will be produced as PDF formatted files as described above. Additionally:

  a. In scanning paper documents, distinct documents should not be merged into a single file, and single documents should be split into multiple documents (*i.e.*, paper documents should be logically unitized). The Parties will use reasonable efforts to have their vendors unitize documents correctly and will commit to address situations where there are improperly unitized documents.

  b. The Parties agree that any file folders and/or documents affixed to hard copy documents will be scanned as separate documents.

  c. The Parties agree to provide the appropriate load/unitization files in accordance with attached Exhibit A and consistent with the specifications for such files set forth in Section 2, above.

  d. The Parties agree that the producing Party also produce searchable optical character recognition ("OCR") text of scanned paper documents consistent with the specifications for Searchable Text set forth in Section 2, above.

4. Production of ESI in Native File Format

The Parties agree that ESI shall be produced as PDF files with accompanying load file except that certain documents will be produced in native format, specifically:

- Spreadsheet formatted document files (e.g., Microsoft Excel Files)

7

4871-2711-8720 v1

- Multimedia audio or visual files such as voice and video recordings (e.g., .wav and .mpeg)

- Presentation files (e.g. .PPT, .PPTX, and .KEY files).

The Parties may discuss additional production in native format on a document by document or category by category basis. Any documents produced in native format should be produced in accordance with the following specifications:

a.      A unique document number shall be used as the file name, and the original file name and file extension shall be preserved in the corresponding load file.

b.      For each produced native file, the producing Party will provide a static image slipsheet indicating that the document was produced in native format and providing the unique Bates number and confidentiality designation for the corresponding native file. Any confidentiality designation will also be provided in the corresponding load file.

c.      Prior to a trial or other proceeding at which the receiving party may use a native document, the receiving party agrees to advise the producing party if the native document has been produced without a corresponding PDF slipsheet.

d.      If a document that otherwise would be produced in native format requires redaction, such documents may be produced in PDF format in accordance with this Protocol.

e.      For each document produced in native format, the producing Party will provide all metadata contained in the field identified in Exhibit B.

5.      <u>Production of ESI as Static Images</u>

Except for those documents produced in native format pursuant to Section 4, above, the Parties agree that ESI will be produced in PDF format with accompanying load file as describe in

Section 2, above. Additionally:

a. The Parties agree to meet and confer regarding file types that are not amenable to conversion into PDF files and which may not be easily produced in native file format. If necessary, any such relevant and responsive, but non-convertible files, may be temporarily produced in the form of a placeholder PDF file.

b. When processing ESI, the Parties agree to use Coordinated Universal Time (UTC) as the time zone.

c. When processing ESI for production as a static image, the Parties agree that "Auto Date" be forced off, and "hidden columns or rows", "hidden worksheets", "speaker notes", "track changes", "comments" and other similar information viewable in the native file be forced on such that the information is preserved to the extent practical and appears on the produced image file.

d. Parent-Child Relationships (i.e., the association between an attachment and its parent conveying document) that have been maintained in the ordinary course of business shall be preserved at processing and production, such that the attachments appear in order behind the conveying email. A non-responsive attachment within an otherwise produced family shall be represented in the production by a single page slipsheet indicating the attachment is non-responsive and appearing in order behind the conveying responsive email.

e. The Parties are not obligated to manually populate any fields in Appendix B that cannot be extracted from the document using automated processes with the exception of Custodian, BegBates, and EndBates.

f. Known software files identified in the National Software Reference Library

STIPULATED FORMS AND FORMAT FOR DOCUMENT PRODUCTIONS

4871-2711-8720 v1

database maintained by the National Institute of Standards and Technology ("NIST") need not be collected or produced.

g. In order to reduce the burden of collecting and producing irrelevant and non-substantive material, the Parties are not obligated to collect or produce contact files, unless requested as to specific custodians.

h. To the extent that the Parties request information from enterprise or relational databases or other structured data (e.g. Oracle, SQL Server, DB2), responsive information contained within a database will may be produced by querying the database and generating a flat file report or exportable electronic file (e.g., .CSV) of such data along with relevant fields for review by requesting Party. The Producing Party shall notify the requesting Party when information sought is maintained as structured data, and shall meet and confer regarding query terms and file production.

i. Embedded Objects in an ESI file are to be extracted at processing. Some file types may contain embedded objects, typically found in the following productivity types: MS Excel, MS Word, MS PowerPoint, MS Project, MS Outlook, MS Access, as well as Adobe Acrobat (PDF). Objects within those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded if the file in which these objects are embedded is produced.

j. Documents that are associated by hyperlink or otherwise linked to another location or file without being embedded will not be treated as attached files and will not be produced as if attachments in order behind the document in which they were referenced by link. Such documents will be treated in accordance with their

STIPULATED FORMS AND FORMAT FOR DOCUMENT PRODUCTIONS

4871-2711-8720 v1

originating location and collected, processed, and produced as governed by the relevant procedures and protocols as outlined in this order for each document's file type and data source.

k. Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure the compressed file within a compressed file is decompressed into the lowest possible compressing resulting in individual files.

l. The Producing Party will take reasonable steps to unencrypt any discoverable ESI that exists in encrypted format (e.g., password-protected) and that can be reasonably unencrypted based on industry standards for production.

6. Redactions

Parties agree that ESI and paper documents may need to be redacted. To the extent that a responsive document contains non-responsive information unrelated to this matter, information that is protected from disclosure by applicable privilege or immunity, information that is commercially sensitive or proprietary, information that is governed by applicable privacy law or regulation, such as private or personally identifying information, or other information that the Protective Order entered allows to be redacted, the producing Party may produce that document in redacted form. Each page of the document from which information is redacted shall bear a designation that it has been redacted, or when the document has been redacted in full, a single page slipsheet may be produced to provide designation indicating the reason it was withheld from an otherwise produced family. Any confidentiality designation will also be provided in the corresponding load file.

To the extent that any document contains information that is redacted, those documents shall be produced in the form of a redacted PDF file. Documents otherwise produced natively,

STIPULATED FORMS AND FORMAT FOR DOCUMENT PRODUCTIONS

4871-2711-8720 v1

such as Spreadsheets, may be redacted and produced in native format and the Parties will ensure that the original data in the redacted spreadsheets will be preserved.

7. <u>Search Methodology and Data Reduction</u>

The Parties expect to employ one or more search methodologies in order to reduce discovery burdens, including possibly but without limitation the use of search terms, predictive coding, statistical-based sampling, and other advanced search and retrieval technologies to identify potentially relevant ESI, including email. All meet and confer sessions regarding search methodologies will give appropriate consideration to minimizing expense and the producing Party's ability to best evaluate and determine appropriate procedures, methodologies, and technologies for preserving, collecting, and producing ESI and other documents.

With the objective of limiting the scope of review and production, the Parties agree to meet and confer to try to develop a mutually agreeable list of custodians, data sources, and key search terms for each Party and to identify the time period that may contain responsive documents. Nonetheless, the use of terms does not require production of non-responsive, irrelevant materials or content merely due to the presence of a search term or search terms, which will be applied to all in scope data sources as a default. All documents within the responsive time period for the agreed upon custodians and data sources that contain an agreed upon search term for that Party will be analyzed to determine responsiveness and produced as required per this Protocol.

Any search for potentially relevant documents and ESI shall involve searching for such documents in data sources within which such documents and ESI are likely to be most readily accessible. Data sources that are not reasonably accessible because of undue burden shall not be considered for search. If data sources are identified that are not readily accessible, the Parties shall meet and confer to discuss the necessity of searching such data sources.

STIPULATED FORMS AND FORMAT FOR DOCUMENT PRODUCTIONS

4871-2711-8720 v1

8. Deduplication

The Parties shall make reasonable efforts to deduplicate ESI. Parties may deduplicate stand-alone documents or entire document families vertically within each custodian or horizontally (also referred to as globally) across custodians. ESI will be considered duplicative if it has matching MD5 or SHA-1 hash values. Documents with the same content but different metadata can also be identified through the use of near-duplication technology, provided that only documents identified by such technology are 100% near-duplicates shall be considered duplicates for purposes of this paragraph.

When comparing document families, if a parent document is an exact duplicate but one or more attachments or embedded files are not exact duplicates, neither the attachments or embedded files, nor the parent document, will be deduplicated.

Attachments to emails shall not be eliminated from their parent emails by deduplication. Where a responsive stand-alone document is an exact duplicate of an email attachment, the email attachment must be produced and the stand alone document may be deduplicated.

A list of all custodians who were in possession of the document, including those whose copy of the document was removed during deduplication, should be placed in the CUSTODIAN_DUPLICATE (or "DUPLICATE_CUSTODIAN") field, with each entry separated by a semi-colon (;) character, as set forth in Exhibit B.

9. Email Threading and Privileged Documents

In order to reduce the volume of entirely duplicative content within email threads, the Parties may utilize threading or "email thread suppression." As used in this Protocol, email thread suppression means employing commercially acceptable methods to reduce production of duplicative email threads by producing only the inclusive email messages and their attachments

STIPULATED FORMS AND FORMAT FOR DOCUMENT PRODUCTIONS

from each email thread. An email message is inclusive when it contains any non-duplicative content or has a document or set of documents attached that does not appear elsewhere within the email thread. Typically, an inclusive email will be either the longest, most recent in time email message containing all of the text from previous, earlier in time email messages within that same thread or an email message with attachments not otherwise attached to a later in time email within that same thread, but any email will be treated as inclusive when it contains non-duplicative content. Accordingly, exact duplicates of emails as well as email messages comprised of text identical to text contained within an inclusive email in the same conversation will be suppressed and not produced, however responsive, non-duplicative attachments will be produced along with their conveying email message even when the text of that parent email message is fully represented in a longer, later in time email thread.

For all responsive documents withheld in their entirety for Privilege, the producing party will produce a Privilege Log explaining the documents withheld. It will be produced within 30 days of the production from which the document(s) were withheld. Defendant Bayer has no obligation to produce or log information related to communications solely between Bayer and Shook Hardy & Bacon LLP, generated after the date of the commencement of this lawsuit.

Duplicative emails suppressed under Section 9 need not be reflected on the Party's privilege log. When there is a chain of privileged emails, the Producing Party need only include one entry on the privilege log for the entire email chain, and need not log each email message contained in the chain separately. In this circumstance, redacted documents from the chain need not be logged as long as (a) for emails, the bibliographic information is not redacted and (b) for non-email documents, the redaction is noted on the PDF file.

To allow efficient logging and limit cost, burden, and delay, when asserting privilege on

STIPULATED FORMS AND FORMAT FOR DOCUMENT PRODUCTIONS

the same basis with respect to multiple documents, it is agreed that a Party may describe the items withheld by group or category. This privilege log will include the date range, document type(s), individuals or email addresses provided as authors/senders and recipient(s), category description, privilege justification, and number of documents withheld for each category. Documents that cannot be generated or included on the categorical log and require a document-by-document or communication-by-communication listing may be generated via a metadata log, consisting of an export of the document date, author/sender, recipient(s), and file type as well as privilege or protection being asserted.

10.    <u>Preservation of ESI</u>

Each Party shall be responsible for taking reasonable and proportional steps to preserve potentially relevant documents and ESI within its possession, custody, or control.

The Parties are not required to modify or suspend, on a going forward basis, the procedures used by them in the ordinary course of business to backup data and systems for disaster recovery and similar purposes related to continuity of operations. The Parties have not taken, and are not required to take, any such backup media out of ordinary rotation, except where requisite preservation of data cannot be completed by other means.

Pursuant to this Protocol, the Parties have no obligation to preserve, collect or produce the following information or data sources if they are not kept in the ordinary course of business:

a.    "Deleted," "slack," "fragmented," or "unallocated" data on hard drives;

b.    Random access memory (RAM) or other ephemeral data;

c.    Online access data such as temporary internet files, history, cache, cookies, etc.;

d.    Data in metadata fields that are frequently updated automatically, such as the "Date Accessed" value in Microsoft Windows operating systems;

STIPULATED FORMS AND FORMAT FOR DOCUMENT PRODUCTIONS

4871-2711-8720 v1

e.  Backup tapes or media which are not readily accessible because of undue burden or cost or other "Backup Systems" that periodically store electronic information to permit recovery of the information in the event of a system failure;

f.  Legacy data contained on computers or information storage systems or software that is no longer used or supported by a Party and no longer reasonably accessible;

g.  Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report;

h.  Known junk files from the NIST list or unimportant data files;

i.  Network, server, or software application logs, except where such logs are relevant and/or responsive to the underlying case;

j.  Structural files not material to individual document contents (e.g. .CSS, .XSL, .XML, .DTD, etc.);

k.  System files and files not actively saved by user, except where such files are being created or edited by the user and are routinely automatically saved by the computer system, such as cloud-based storage and applications;

l.  Automated emails not generated by a human author, including but not limited to automated out of office replies, except where such emails include conditional and/or status reporting information (e.g.: event detection, system status, equipment operation condition, alert reporting, temperature sensors, fire reporting and control, environmental control, air quality, seismic) and which are relevant to the underlying underlying;

m.  Custodial data outside of named Document Custodians collection in Section 7 as

STIPULATED FORMS AND FORMAT FOR DOCUMENT PRODUCTIONS

4871-2711-8720 v1

agreed upon and delineated in the meet and confer;

n.     Non-Party or third party data not in the possession, custody or control of the Producing Party; and

o.     Other forms of ESI whose preservation requires extraordinary affirmative measures and which are not utilized in the ordinary course of business.

11.    <u>Non-Waiver of Privilege or Protection</u>

Any Party's production of privileged or work-product protected documents, ESI or information shall not constitute a waiver of the privilege or protection, as outlined in the Stipulated Confidentiality and Protective Order. Further, nothing contained herein is intended to or shall serve to limit a Party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production. For documents withheld on a claim of privilege, the Parties agree to provide a "privilege log" as outlined pursuant to Fed. R. Civ. P. 26(b)(5).

12.    <u>Data Security, Control and Protection</u>

The Parties agree that a Party receiving documents, ESI or other information exchanged in this matter shall take precautions to secure the materials received and prevent unauthorized access, disclosure or dissemination. Parties shall exercise at least the same standard of due and proper care with respect to the storage, custody, use, and/or dissemination of information exchanged in this matter as is exercised by the recipient with respect to its own information of the same or comparable confidentiality and sensitivity. Efforts to protect disclosure of "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" or "FOREIGN CONFIDENTIAL PERSONAL DATA" are outlined in the Stipulated Confidentiality and Protective Order.

STIPULATED FORMS AND FORMAT FOR DOCUMENT PRODUCTIONS

4871-2711-8720 v1

13.     Limitation

Nothing in this Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.

This Protocol does not address, limit, or determine the authenticity, admissibility, relevance, discoverability, or agreement to produce of any document or ESI. The Parties are not waiving the right to seek any discovery and are not waiving any objections to any discovery requests.

All documents produced hereunder are fully protected and covered by the Parties' confidentiality agreements, by any clawback agreements entered into by the Parties, and by the Confidentiality and Stipulated Protective Order and any other applicable orders entered by this Court in this matter. If the Producing Party is producing a Document subject to a claim that it is protected from disclosure under the Stipulated Confidentiality and Protective Order, the Producing Party shall make the designation as described in the Stipulated Protective Order.

Nothing in this document prevents the parties from modifying this agreement should the terms of the stipulation be found to be technically, economically, or procedurally infeasible, or it becomes in the best interest of the Parties to modify the agreement. If, at any time, any Party becomes aware of issues with the stipulation, they are encouraged to contact the other Party or Parties to request modification, and the other Party or Parties shall not unreasonably refuse to such a request.

///

///

///

STIPULATED FORMS AND FORMAT FOR DOCUMENT PRODUCTIONS

4871-2711-8720 v1

**IT IS SO STIPULATED AND AGREED, THROUGH COUNSEL OF RECORD.**

**STIPULATED AND AGREED:**

Dated:  September 22, 2023

SHOOK, HARDY & BACON L.L.P.

By: */s/ Edward Gaus*
    Frank Kelly
    Amir Nassihi
    Edward Gaus
Attorneys for Defendant
BAYER HEALTHCARE LLC,
erroneously sued as BAYER
CORPORATION

Dated:  September 22, 2023

ARNS DAVIS LAW

By: */s/Shounak Dharap*
    Robert Arns
    Jonathan E. Davis
    Zachariah Hansen
    Shounak Dharap
***Attorneys for Plaintiffs***
***BEN CASILLAS JR., APRIL***
***CASILLAS; SAUL SANCHEZ,***
***LILIAN SOTO, ET AL.***

STIPULATED FORMS AND FORMAT FOR DOCUMENT PRODUCTIONS

**EXHIBIT A**

**Fields for Production of Paper Documents Converted to Static Images**

Note: The chart below describes the fields to be produced with the Load / Unitization Files in generic, commonly used terms.  Field names may vary from the below.

| Field | Definition |
|---|---|
| CUSTODIAN | Name of person from whose files the document is produced |
| BEGBATES | Beginning Bates Number (production number) |
| ENDBATES | End Bates Number (production number) |
| BEGFAMILY | First Bates number of family range (i.e., Bates number of the first page) |
| ENDFAMILY | Last Bates number of family range (i.e., Bates number of the last page of the last attachment) |
| PGCOUNT | Number of pages in the document |
| TEXTPATH | File path for OCR or Extracted Text files |

4871-2711-8720 v1

**EXHIBIT B**

**Fields for Production of ESI**

Note:  The chart below describes the fields to be produced with  the Load / Unitization Files in generic, commonly used terms.  Field names may vary from the below.

| Field | Doc | Definition |
|---|---|---|
| CUSTODIAN | All | Name of person or non-custodial datasource from whose files the document is produced |
| DUPLICATE_CUSTODIAN or CUSTODIAN_DUPLICATE | All | Custodian, plus any additional Custodian(s) who had a duplicate copy removed during global deduplication (with each Custodian separated by a semicolon (;) character) |
| BEGBATES | All | Beginning Bates Number (production number) |
| ENDBATES | All | End Bates Number (production number) |
| BEGATTACH | All | First Bates number of family range (i.e., Bates number of the first page) |
| ENDATTACH | All | Last Bates number of family range (i.e., Bates number of the last page of the last attachment) |
| PGCOUNT | All | Number of pages in the document |
| FILETYPE/APPLICATION | All | Application used to create document |
| FILEEXT | All | File extension of the native file (e.g., XLS, DOC, PDF) |
| FILEPATH | eDocs | File source path for all electronically collected documents, which includes location, folder name |
| FILENAME | eDocs | File name of the original electronically collected documents |
| DOCTYPE | All | Descriptive field created by the vendor processing software (e.g. email, edoc, image, attachment) |

STIPULATED FORMS AND FORMAT FOR DOCUMENT PRODUCTIONS

4871-2711-8720 v1

| | | |
|---|---|---|
| HASHVALUE | All | MD5 Hash or SHA Value created during processing |
| FROM | eMail | Sender of email |
| TO | eMail | Recipient of email |
| CC | eMail | Additional Recipients of email |
| BCC | eMail | Blind Additional Recipients of email |
| SUBJECT | eMail | Subject line of email |
| DATESENT (mm/dd/yyyy hh:mm) | eMail | Date and Time Sent |
| DATERCVD (mm/dd/yyyy hh:mm) | eMail | Date and Time Received |
| DATECRTD (mm/dd/yyyy hh:mm) | eDoc | Creation Date and Time |
| DATEMOD (mm/dd/yyyy hh:mm) | eDoc | Last Modified Date and Time |
| TITLE | eDoc | Title field value extracted from the metadata of the native file. |
| AUTHOR | eDoc | Creator of a document |
| LASTAUTHOR | eDoc | Last Saved By field contained in the metadata of the native file |
| CONFIDENTIALITY | eDoc | Confidentiality designation for documents produced in native format |
| NATIVEFILELINK | All | For documents provided in native format |
| TEXTPATH | All | File path for OCR or Extracted Text files |

STIPULATED FORMS AND FORMAT FOR DOCUMENT PRODUCTIONS

4871-2711-8720 v1