UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEN CASILLAS, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>BAYER CORPORATION,<br><br>  Defendant. | Case No. 23-cv-01609-AMO<br><br>**ORDER RE MOTION TO DISMISS THIRD PARTY DEFENDANT'S COUNTERCLAIM**<br><br>Re: Dkt. No. 48 |

Defendant Bayer Healthcare LLC's ("Bayer")[1] motion to dismiss the counterclaim of Third-Party Defendant Linoleum Sales Co. Inc. dba Anderson Commercial Flooring ("Anderson") was heard before this Court on March 7, 2024. Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court hereby **GRANTS** the motion for the following reasons.

**I.  BACKGROUND[2]**

Bayer and Anderson have a long-standing relationship – they entered into a Master Services Agreement (the "MSA") governing Bayer's ongoing needs for flooring installation and repair on or about April 10, 2013. ECF 14-1. Relevant here, the parties agreed to indemnify each other. The indemnification provisions refer to Anderson as "Company" and provide as follows:

---

[1] The parties confirmed at the hearing that Bayer Healthcare LLC is the appropriately named Defendant in this case regardless of whether certain filings list "Bayer Corporation" as the Defendant. *See, e.g.*, Complaint (ECF 1-1).

[2] The FAC and the Counterclaim make the following allegations, which the Court accepts as true for purposes of the motion to dismiss. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

9. Indemnification/Limitation on Liability

a. Company will indemnify and hold harmless Bayer, its subsidiaries, affiliates, successors, assigns, officers, directors, stockholders, employees and customers (the "Bayer Indemnitees"), from and against any and all liability, losses, damages, claims, demands, fines, causes of action, suits or proceedings and expenses connected therewith (including reasonable attorneys' fees) ("Losses") arising from or related to performance of the Services or the breach of any representation or warranty herein except to the extent caused by the negligence or willful misconduct of Bayer. Company's obligations pursuant to this Section 9(a) shall survive expiration or termination of this Agreement.

b. Bayer will indemnify and hold harmless Company from and against any and all Losses arising from breach of this Agreement by Bayer except to the extent caused by the negligence or willful misconduct of Company. Bayer's obligations pursuant to this Section 9(b) shall survive expiration or termination of this Agreement.

c. Company shall indemnify and hold the Bayer Indemnitees harmless with respect to any Loss related or arising out of any assertion that Bayer should be deemed the "employer" or "joint employer" of any individual performing Services under this Agreement. In any and all claims for any Loss against any of the Bayer Indemnitees by any employee of Company, or anyone directly or indirectly employed by Company, or anyone for whose acts Company may be liable, Company's indemnity obligations of this Section (c) shall not be limited in any way by any limitation on the amount or type of damages under workers' compensation, disability benefits, or any other employee benefits.

d. In the event that any Bayer Indemnitee or Company intends to claim indemnification under this Section 9 it shall promptly notify the other party (the Indemnitor") in writing of such alleged Loss. The Indemnitor shall have the sole right to control the defense and settlement thereof. The indemnified party shall cooperate with the Indemnitor and its legal representatives in the investigation of any Loss and shall do nothing which would adversely affect such defense or settlement. The indemnified party shall not, except at its own cost, voluntarily make any payment or incur any expense with respect to any claim or suit without the prior written consent of the Indemnitor, which the Indemnitor shall not be required to give.

e. BAYER WILL NOT BE LIABLE FOR ANY DIRECT, INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING, WITHOUT LIMITATION, LOSS OF DATA, USE OR ANY OTHER LEGAL THEORY, IN CONNECTION WITH OR ARISING OUT OF OR RELATED TO THIS AGREEMENT OR THE SERVICES PROVIDED HEREUNDER, EVEN IF BAYER HAS BEEN APPRISED OF THE LIKELIHOOD OF SUCH DAMAGES OCCURRING.

ECF 14-1 at 7-8.  Pursuant to the MSA, Bayer sent Anderson a written notice of its request for indemnification for this case on June 13, 2023.  Counterclaim ¶ 74.

On January 23, 2023, Ben Casillas, Jr., and Saul Sanchez, employees of Anderson, were injured during a fire that occurred at Bayer West Berkeley Manufacturing Facility.  Amended Complaint ("FAC," ECF 35) ¶ 16.  The Anderson employees were patching vinyl flooring at the facility when a fire started and caused Casillas and Sanchez to suffer second- and third-degree burns.  FAC ¶¶ 14-16.  On February 27, 2023, Casillas passed away due to his injuries.  FAC ¶ 17.

Plaintiffs, the injured employees and their families, initiated this case by filing the Complaint in the California Superior Court for the County of Alameda on February 23, 2023, prior to Casillas's death.  ECF 1.  On April 4, 2023, Bayer filed an Answer to the Complaint and removed the action to this Court, titled *Casillas et al v. Bayer Corporation et al*, N.D. Cal. No. 3:23-cv-1609.  ECF 1.  Plaintiffs filed the Complaint in the related action on April 6, 2023, also in Alameda Superior Court.  Bayer filed its answer and removal to this Court on April 27, 2023.  *See Casillas et al v. Bayer Corporation et al.*, N.D. Cal. No. 3:23-cv-2199 (the "Related Action").

On September 25, 2023, Bayer filed a Third-Party Complaint against Anderson.  ECF 37.  Bayer's Third-Party Complaint seeks express indemnity from Anderson based on section 9(a) of the MSA, which is Anderson's duty to indemnify Bayer for Plaintiff's claims against Bayer.  *Id.*  Anderson filed an Answer to the Third-Party Complaint and a Counterclaim against Bayer on October 17, 2023.  *See* Anderson's Answer & Counterclaim ("Counterclaim," ECF 41).

**II.     DISCUSSION**

Bayer moves to dismiss both of Anderson's counterclaims.  In the first cause of action for "Express Indemnity Against Bayer," Anderson asserts that Bayer breached the MSA between Anderson and Bayer when it failed to comply with the indemnification procedures as set forth in the MSA, and that breach entitles Anderson to express indemnity from Bayer.  Counterclaim ¶¶ 72-87.  In the second cause of action for "Equitable Indemnity Against Bayer," Anderson requests equitable indemnity from Bayer for "any and all injuries, damages, or detriment, if any" that "were proximately caused by the negligence and/or tortious conduct misconduct of Bayer."

3

1  Counterclaim ¶¶ 89-95.  The Court examines the sufficiency of the claims in turn after setting
2  forth the legal standard for dismissal.

### A. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint.  *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003).  Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted).  A claim is facially plausible when the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679.

### B. Express Indemnification

"Indemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person."  Cal. Civ. Code § 2772.  "An indemnity agreement is to be interpreted according to the language and contents of the contract as well as the intention of the parties as indicated by the contract." *Myers Bldg. Indus., Ltd. v. Interface Tech., Inc.*, 13 Cal. App. 4th 949, 968, (1993).  Courts determine the extent of the duty to indemnify from the contract.  *Id.* at 968-69; *see also Peter Culley & Assocs. v. Superior Ct.*, 10 Cal. App. 4th 1484, 1492, (1992) ("Paramount is the rule that where . . . the parties have expressly

contracted with respect to the duty to indemnify, the extent of that duty must be determined from the contract and not by reliance on the independent doctrine of equitable indemnity.").

Because the Court interprets the obligation to indemnify according to the parties' contract, the MSA, the Court begins its analysis with the conditions for indemnification imposed by the MSA. Anderson's counterclaim for express indemnification against Bayer arises from section 9(b) of the MSA, and Bayer's obligation to indemnify Anderson under that section only arises where Bayer has breached the MSA. *See* ECF 14-1 at 7-8. Anderson relies on its affirmative defense of breach of contract to establish that Bayer breached the MSA. Counterclaim ¶ 60. In particular, Anderson charges Bayer breached the contract by failing to comply with the terms of section 9(d), which governs the procedure by which either party may claim indemnification. Anderson asserts that section 9(d) requires Bayer, as the party seeking indemnification, to "promptly notify" Anderson; to give Anderson "sole right to control the defense and settlement"; to "cooperate with [Anderson] in the investigation"; to "do nothing which would adversely affect such defense or settlement"; to not "voluntarily make any payment or incur any expense with respect to any claim or suit without the prior written consent of [Anderson]." Counterclaim ¶ 73. The Court must assess whether, accepting Anderson's allegations as true while not accepting mere legal conclusions, Anderson pleads a breach of contract sufficient to support its claim for indemnification under the MSA.

Under California law, a breach of contract claim requires "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). Neither party contests the first two elements – the Court thus accepts without deciding that the MSA constitutes a valid contract and that Anderson performed its obligations under the MSA. Bayer argues in part that Anderson fails to allege damages. Because Bayer is correct and Anderson cannot plead the fourth element, damages, the Court's analysis begins and ends there.

Anderson alleges that Bayer breached section 9(d) the MSA by failing to provide "prompt notice" of its indemnity request. Anderson asserts that Bayer has engaged "in substantive litigation in this action, making numerous filings, and incurring expenses without obtaining prior

consent from Anderson" in the months prior to June 13, 2023. Counterclaim ¶¶ 74-83. However, Anderson fails to allege that it suffered any damages based on Bayer's failure to comply with the notice requirements of section 9(d). Anderson confuses the kinds of losses subject to an express indemnity claim under the MSA, on the one hand, with the procedures the MSA anticipates a party to follow when claiming an indemnifiable loss, on the other hand. At best, Bayer's failure to comply with the notice requirements may serve as a defense to Bayer's claim for indemnity, a far cry from entitling Anderson to recovery.

Bayer additionally concedes that it would not be entitled to indemnification in the form of costs and expenses incurred prior to its June 13, 2023 presentation of its claim to Anderson. Relevant to this point is the final sentence of section 9(d): "The indemnified party shall not, except at its own cost, voluntarily make any payment or incur any expense with respect to any claim or suit without the prior written consent of the Indemnitor, which the Indemnitor shall not be required to give." Bayer posits without reference to this provision that Anderson's liability for Bayer's cost of defense is limited – the obligation to indemnify did not begin until Bayer tendered its request for indemnification. Mot. (ECF 48) at 8. But even if Bayer reserved the right to seek indemnification for the costs incurred prior to the presentation of its request for indemnification, a plain reading of the MSA clarifies that Bayer incurred the expenses at its own cost, and Anderson bears no post-hoc responsibility for the expenses for which it did not grant prior written consent. Bayer requested indemnification June 13, 2023. Counterclaim ¶ 74. Thus, Anderson is not liable for Bayer's pre-tender costs and fees incurred prior to June 13, 2023, and therefore, has not suffered any damages resulting from an allegedly late tender.

Thus, Anderson's theory of breach of contract fails as a matter of law because it cannot establish that it suffered any damages from the purported breach of section 9(d). Section 9(b) of the MSA only permits Anderson to pursue indemnification from Bayer if Anderson is damaged as a result of Bayer's breach of the MSA. Because Anderson fails to plausibly allege that it suffered damages as a result of Bayer's purportedly tardy request for indemnification, Anderson's counterclaim for express indemnification must fail. The Court therefore **DISMISSES** the counterclaim.

### C. Equitable Indemnification

Bayer argues that Anderson's second counterclaim, for equitable indemnification, fails because California law precludes equitable indemnity claims when the parties have a contractual indemnity agreement. Bayer is correct. *See, e.g., Liftech Consultants Inc. v. Samsung Shipbuilding & Heavy Indus., Ltd.*, No. C 10-2976 SBA, 2010 WL 4510905, at *4 (N.D. Cal. Nov. 2, 2010) (applying California law to determine that when an express indemnity agreement exists, a party is "legally precluded" from asserting an equitable indemnity claim); *see also Maryland Cas. Co. v. Bailey & Sons, Inc.*, 35 Cal. App. 4th 856, 873 (1995). Here, the MSA includes an entire section regarding contractual indemnification. *See* MSA § 9. Indeed, Anderson's claim for breach of the MSA relies on a purported violation of the indemnification section. This contractual indemnity agreement precludes Anderson's equitable indemnity claim. The Court therefore **DISMISSES** this counterclaim with prejudice.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Bayer's motion to dismiss the counterclaims of third-party defendant Anderson. Both claims for indemnification fail and amendment would prove futile; therefore, the Court **DISMISSES** Anderson's counterclaims **WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated: May 23, 2024

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**